KIPP et v
CITIZENS' LOAN & SAVINGS ASSN
FINNARN et v GOUBEAUX
KRICKENBERGER v GOUBEAUX
ESTEY v GOUBEAUX
HOCKER v GOUBEAUX
(5 Cases)

Ohio Appeals, 2nd Dist, Darke Co

Nos 477, 480, 481, 482 & 483

Decided July 5, 1935

Orel J. Myers, Dayton, for Estey, Guardian, and Hocker, Executrix.

Billingsley & Manix, Greenville, for receiver.
Herman F. Krickenberger, Greenville, for Krickenberger, Guardian.
Murphy & Staley, Dayton, for Champion Lodge, No. 742, I. O. O. F.

674

**OPINION**

By BARNES, PJ.

Under the evidence as presented, we are in accord with the court's determination so far as the claimants are in this court, that neither had preferred claims; but the determination of this single question does not adequately instruct the receiver as a guide in his distribution of the assets.

As we view it, the real question for determination is whether or not the claimants are partners. If partners, then they can not be a creditor. Partners as such, are only entitled to a distribution of any balance remaining after creditors have been paid in full. Under the record as presented in the several cases before us, we have no difficulty in arriving at the conclusion that there is no evidence from which the slightest inference can arise that they are partners. On the contrary, the record as presented conclusively shows that they are not partners.

In arriving at this conclusion it is not necessary to consider the fiduciary or representative character of the claimants. In other words, the finding would be the same even if the claimants were individuals.

It is proper that we set forth briefly our reasons for this conclusion.

After a consideration of all the evidence we fail to find a single act of any of the four claimants which could raise even the slightest inference of joining a partnership. All they did was deposit money and re-

ceive, as evidence of their deposits, what has been designated a pass book. In the front of the pass book is printed, under heading "Articles of Association," nineteen articles.

Article 3, §1, reads as follows:

"Section 1. Any person in his or her own right or as trustee, may become a member of the association at any time by subscribing to these articles and the number of shares desired."

Neither of the four claimants in this court subscribed to the articles or signed for stock.

Nowhere in the articles of association is it provided that the mere deposit of funds makes him or her a member of the association. Even if we indulge the presumption that the claimants are charged with knowledge of the full content and import of each and every section of the articles of association, we find nothing inferring membership from the mere fact of deposit.

The articles of association control the members and their rights, and nothing more. None of the claimants in this court received any stock, nor was any issued in their names. There is no evidence that they participated in the election of officers or any of the business affairs of the association. So far as is disclosed from the record, their relationship to the association was the same as would be the depositor in any building and loan association or savings bank.

The name under which it operated business did not suggest a partnership, nor do the articles of association.

We do not want to be understood as saying that membership in a partnership might not arise, even though the individuals did not subscribe to the articles of association, nor would it be necessary that stock be issued.

It is impossible at this time to set forth just what acts or conduct would impress upon the individual the status of a partner, and hence we only refer to this question in a general way. To attempt to do so would be purely dictum and not determinative of the rights of parties whose claims are not now under consideration. So far as the claimants before us are concerned, we do determine that they are not partners. That they are creditors and as such their claims are on a parity with all other deposit creditors, whether evidenced by book deposit or certificate of deposit.

In fairness to all other claimants we think the order and judgment of the Common

Pleas Court should be modified in conformity to our conclusion that the claimants are creditors and not partners; that the four claimants prosecuting appeal or error before us do not hold preferred claims, but are general creditors.

It will be apparent to counsel that we have no jurisdiction to pass on any question other than the ones raised by appeal or proceedings in error by the four claimants.

The costs of this proceeding will be adjudged against the receiver.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.

## ON APPLICATION FOR REHEARING

Decided July 29, 1935

By THE COURT

The above cases are now being determined on application for rehearing. The grounds are the same in each case and are set forth as follows:

"First: The admitted facts in the above entitled cause show that the Citizens' Loan & Savings Association, at the time it received the deposit of the trust funds from Miriam Hocker, knew they were trust funds, and entered the same as such on the books of the association.

Second: The admitted facts further disclose that the deposit of said funds was not authorized by the statute or expressly approved by the court having control of the administration of the trust, and that there were no provisions in a will creating or establishing the trust conferring power to make the deposit in question.

Third: That by reason of the above. the Citizens' Loan & Savings Association of Greenville, Ohio, accepted the trust funds impressed with the trust, and the claim of Miriam Hocker, as Executrix-Trustee of the Estate of W. P. Dowler, is a preferred claim, and not that of a general creditor."

In the memorandum accompanying the application for rehearing, the case of the **Home Savings & Loan Company v Strain et, Trustees,** is cited, **130 Oh St, page 53.** This case is found in Ohio State Bar Association Report, under date of July 1, 1935, at page 53.

While our original opinion bears date of July 5, and thereby would indicate that it was subsequent to the reported case in 130 Oh St, supra, however, the **fact is** that our

original opinion was prepared and transmitted to our court reporter at Dayton, Ohio, prior to July 1, 1935. This will explain why the decision of the Supreme Court was not referred to in our opinion.

The question stressed both in the oral arguments and the briefs in the original hearing involving not only these claimants but others, was whether or not such claimants were or could be partners, as was the claim of counsel for the receiver.

Counsel for the present applicants in his brief did briefly urge the additional question that the claims of his clients should be determined to be preferred.

It was our determination that none of the claimants in the cases presented to us were partners. We held in each instance that they were general creditors and not entitled to preference.

Counsel for applicants now feel that under the language of our original opinion the question of the status of these claimants is more important and hence again urges the claim for preference and claims that the decision of the Supreme Court, **130 Oh St, 35,** is controlling.

We have had under consideration the above decision of the Supreme Court in another case submitted to us and hence are familiar with its holding. The question of preference was not involved in the case decided by the Supreme Court.

The plaintiff, Strain, and others, were trustees of certain funds under the will of William J. Berry. The will as to the trust provided as follows:

"Shall be held in trust, invested or placed at interest by my said executors, and the proceeds thereof paid annually to my devisees and legatees as directed herein * * *."

The trust fund in question was deposited with the defendant, The Home Savings & Loan Company, of Youngstown, in the nature of a purchase of the running stock of said company. The action was brought to have such funds impressed with the trust in the hands of the defendant, upon the ground that such disposal of the funds was without authority of law and without any order of the Probate Court and unauthorized by the provisions of the will.

The defendant company had notice of the trust and the trial court determined that it had notice of the lack of authority of the plaintiff's trustees to purchase running stock. The assets of the defendant company over and above the amount necessary for the payment of all depositors was substantially $437,000.00. The pertinent

676 of the judgment of the trial court

portion of the judgment of the trial court (affirmed by the Court of Appeals and also the Supreme Court) reads as follows:

"It is therefore considered, ordered and adjudged by the court that defendant, The Home Savings & Loan Company, return to plaintiffs, as trustees, the sum of $5473.46 and the balance of the legal profits realized thereon by it, and judgment is rendered for said amount found due, and execution is awarded to plaintiffs against said defendant; that said original trust fund and legal profits derived therefrom are and were impressed with a trust thereon."

The defendant company was not in liquidation but was a solvent going concern and hence the question of preference could not arise.

Reduced to its true meaning, the plaintiff trustees received a judgment against the defendant in the sum of $5473.46, plus profits, and execution was awarded thereon.

We understand clearly that counsel is basing his claim for preference on the finding of the court that the original purchase of running-stock was impressed with a trust.

As between the original parties to this illegal and unauthorized contract of sale and purchase of the stock of the defendant company, the rights are readily determinable in an action at law. Execution was awarded upon the judgment and the assets of the company were adequate to pay the judgment without involving the amount necessary to pay depositors.

In the instant case, by reason of the insolvency of The Citizens' Loan & Savings Association, of which E. A. Goubeaux was receiver, equities arise as to the rights of the other creditors. These other creditors, some six hundred in number, made their investment deposits in identically the same manner and form as the present applicants. If these fiduciaries by reason of their wrongful act are to be preferred, then the individuals will find their dividends reduced. In other words, because the fiduciaries acted wrongfully they are to be paid in full.

In the case of McDonald, Admr. v Fulton, Supt. of Banks, 125 Oh St, 507, it appears that the administrator had made a deposit in the Cummings Trust Company, incorporated and authorized under the laws of Ohio to do and conduct a banking business. The bank became insolvent and was afterwards taken over by the Superintendent of Banks for liquidation. The plaintiff,

McDonald, administrator, sought to have his deposit declared a preference on the theory that the assets of the bank should be impressed with a trust for the amount of these trust funds. It was held that the trust was not preferred, but upon the liquidation of the bank, the administrator should share proportionately with the general depositors. It is true that this case is to be distinguished from the Strain case, supra, in that under the existing law the action of the administrator in making the deposit was authorized.

We call attention to syllabus 3 in the case of Fulton, Supt. of Banks v The Escanaba Paper Company, 129 Oh St, 90; also found in the Ohio State Bar Association Report, under date of January 14, 1935. The syllabus reads as follows:

"Before a depositor's claim for preference in the distribution of the assets of an insolvent bank may be allowed, he must be able to trace the fund to which he asserts title into the bank's assets at the time of closing. It is not necessary, however, that he follow in specie particular dollars deposited nor that he show that his deposits were converted into specific quantities of cash."

In the case of Board of Commissioners of Crawford County, Ohio v Strawn, 157 Fed., 49, syllabus 1 reads:

"Under the statutes of Ohio a county treasurer has no authority to deposit taxes collected as a general deposit in a bank, and the bank can acquire no title to money so deposited as against the county, nor can an estoppel arise from any act of its officers which will prevent its recovery of such money from a receiver of the bank when it can be identified or traced into other property where it has been mixed with funds of the bank."

We also refer to a discussion of this question found in 37 A.L.R., 115. In the notes the decisions of the courts in other jurisdictions are cited and excerpts therefrom extended.

In the case of Smith et, Trustees v Fuller et, Assignees, reported in 86 Oh St, page 57, the plaintiff trustee was declared a preferred creditor under the facts there presented. The plaintiff trustee had been appointed to wind up and settle the affairs of an insolvent savings company. The trustee deposited the trust funds coming into his hands with the East Side Bank of Toledo, Ohio, taking as evidence thereof a certificate of deposit certifying that he

was trustee and had deposited the fund payable to self on return of certificate properly endorsed, the same not being subject to check and no stipulation for interest made. The court held that under these facts a presumption would be indulged in the absence of proof to the contrary that the trustee intended to perform and not violate his duty, and that the deposit was intended as special and not a general deposit. Thereafter the bank failed and was in the hands of the Superintendent of Banks for liquidation. It was shown that at all times from the time of the deposit to the time of the assignment, there was in the vaults of the bank money of amount and value equal to the amount so deposited. The court held that equity would engraft a trust upon such money and the trustee became a preferred creditor in the amount of such deposit.

A reading of the full text of this case, together with the syllabus, will disclose that the court arrived at its conclusions by reason of many elements not present in the instant case.

We think this case goes farther than any other case considered by the Supreme Court, and, further, that the present day tendency is to hold against preference rather than to extend the ruling.

In the instant case we have a problem of balancing equities between creditors. Beyond the fact that the fiduciary claimants herein acted wrongfully in making their deposits without authority of the court, we find none of the requisite elements necessary to create a preference.

No attempt is made to identify the fund or trace it into other property. The deposit was made as an investment and for the purpose of procuring interest, and therefore it would not be a special deposit. No showing is made that there was in the vaults of the institution at all times a fund sufficient to pay these claims and others of like character.

It is our conclusion that it would be inequitable to declare a preference.

The motion for rehearing will be overruled.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.